UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
CHRISTINE FERNANDEZ *et al.*,                                 :
:
Plaintiffs,                            :
:                          19 Civ. 9513 (JPC)
-v-                                         :
:                          OPINION AND ORDER
219 DOMINICAN VALLE CORP. *et al.*,                       :
:
Defendants.                         :
:
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In the Second Circuit, stipulated dismissals settling claims brought pursuant to the Fair

Labor Standards Act require court approval. Before the Court is the parties' joint letter motion to

approve their settlement agreements. Because the parties failed to provide the Court with all

required information, and because certain aspects of the proposed agreements' release provisions

sweep too broadly, the Court denies this request without prejudice to the filing of a new motion for

approval.

## I. Background

The following facts are taken from the First Amended Complaint. Dkt. 13. Plaintiffs

Christine Fernandez, Johanna Mojica, and Edwin Hernandez worked at The Dominican Valle

Restaurant in the Bronx. Dkt. 13 ("Amended Complaint") ¶ 1. They held various positions,

including server, cook, cashier, cleaner, and delivery person. *Id.* ¶¶ 30, 48, 64. The three former

employees allege that The Dominican Valle Restaurant and its managers/owners, Omar Cordoba

("Omar") and Dorka Cordoba (collectively, the "Cordoba Defendants") failed to pay them the

minimum wage or overtime pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq. Id.* ¶¶ 82-100. Plaintiffs also allege violations of the NYLL's notice-and-recordkeeping requirements. *Id.* ¶¶ 101-06.

In addition to these wage-and-hour claims, Plaintiffs claim they were subjected to various forms of harassment and discrimination at the restaurant. Fernandez alleges that Omar "would put his hands on [her] without her consent" and would watch her on surveillance cameras and "text her at various times telling her to move her body in a certain way." *Id.* ¶¶ 44, 46. Mojica alleges that Omar "would touch her when she walked by him, and he would press his private parts into her." *Id.* ¶ 58. Hernandez, who is Dominican, claims that Omar subjected him to a "hostile work environment" by verbally abusing him and making derogatory comments about Dominicans. *Id.* ¶ 75. Based on this conduct, Plaintiffs brought a claim against the Cordoba Defendants alleging sexual harassment and discrimination pursuant to the New York State Human Rights Law and the New York City Human Rights Law. *Id.* ¶¶ 107-108.[1]

Plaintiffs also allege that the Cordoba Defendants sold the restaurant to a man named Orlando in order "to avoid paying [P]laintiffs['] claims in this case." *Id.* ¶ 2. The Amended Complaint thus names Orlando—whose name later turned out to be Jose Vasquez—and his company, 352 El Club Valle Restaurant Corp. (collectively, the "Vasquez Defendants"), as Defendants, and alleges that they were successors to the Cordoba Defendants and thus are "jointly responsible for all unpaid wages." *Id.* ¶ 5. The Amended Complaint appears not to bring the sexual harassment/discrimination claim against the Vasquez Defendants, *id.* ¶¶ 107-08, but includes an independent claim styled as "successorship liability" that alleges that the Vasquez Defendants are

---

[1] Although Plaintiffs allege violations of state and city laws stemming from both alleged sexual harassment and derogatory ethnic slurs, Plaintiffs pleaded this as one claim for relief. *See* Amended Complaint ¶¶ 107-08. It is unclear whether Plaintiffs meant to plead this as several independent causes of action.

"jointly and severally liable to [P]laintiffs for the losses alleged in this complaint." *Id.* ¶ 111.[2]

On September 29, 2020, Plaintiffs informed the Court that the parties reached tentative settlement agreements as to both the Cordoba Defendants and the Vasquez Defendants.  Dkt. 40. On October 27, 2020, the parties filed their first joint letter motion stipulating to dismissal under Federal Rule of Civil Procedure 41(a) and requesting that the Court approve the proposed settlements as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Dkt. 45.  The Court held a telephonic conference on November 2, 2020 to discuss some of the issues that the Court identified upon initial review of the proposed agreements.  The Court explained that it could not assess whether the settlements are fair and reasonable without additional information. For example, the Court told the parties that any revised settlements must specify the dollar amount that would go to each Plaintiff and "explain the calculations and the factual basis underlying those recovery amounts."  Dkt. 51 ("Nov. 2, 2020 Tr.") at 19.  The Court also expressed concern with the fact that the proposed settlement agreements included "sweeping and overbroad" release clauses that "requir[ed] [P]laintiffs to waive any possible claim against the [D]efendants, including unknown claims and claims that have no relationship whatsoever to the wage and hour issues." *Id.* at 17-18.

The parties filed revised settlement agreements and a new letter motion seeking Court approval of these agreements on November 23, 2020.  Dkt. 48.  Because many of these problems remain, the Court cannot assess whether these new proposed agreements are fair and reasonable under *Cheeks*.

## II. Legal Standard

Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure allows parties to stipulate to a

---

[2] The Amended Complaint numbers two paragraphs as 110.  The Court refers to the second paragraph labeled 110 as number 111.

voluntary dismissal of an action, but subjects this to the limitations of "any applicable federal statute." The Second Circuit has held that the "unique policy considerations underlying the FLSA" place this statute within Rule 41(a)(1)(A)'s "applicable federal statute" exception. *Cheeks*, 796 F.3d at 206. Therefore, in the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 200). Thus, district courts in this Circuit must review a proposed FLSA settlement and determine whether it is "fair and reasonable." *Larrea v. FPC Coffees Realty Co.*, No. 15 Civ. 1515 (RA), 2017 WL 1857246, at *1 (S.D.N.Y. May 5, 2017) (internal quotation marks and citation omitted). "A fair settlement must reflect a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (internal quotation marks and citation omitted).

## III. Discussion

District courts typically evaluate the fairness of an FLSA settlement agreement by considering the factors identified in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *See Fisher*, 948 F.3d at 600. These factors include: "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks and citations omitted). After careful review of the revised settlement agreements, the Court concludes that several issues remain and must be resolved before the Court may assess whether the agreements are fair and reasonable.

## A. Settlement Amount

According to the proposed settlement agreements, the Cordoba Defendants agree to pay Plaintiffs $30,000 over twenty-seven months, and the Vasquez Defendants agree to pay Plaintiffs $8,000 upon approval of that agreement.  Dkts. 48-1 at 3; 48-2 at 3.  Twenty-five percent, or $9,500, will go to Plaintiffs' counsel, Dkt. 48 at 4, leaving the three Plaintiffs with $28,500.  The three Plaintiffs have agreed to split the total amount "based on their losses during their employment with the Cordoba defendants."  *Id.*  Fernandez will receive 64.6%, or $24,548 before attorneys' fees, Mojica will receive 26.1%, or $9,918 before attorneys' fees, and Hernandez will receive 9.3%, or $3,534 before attorneys' fees.  *Id.*

This may well be a fair and reasonable amount.  But on the current record, it is impossible for the Court to know because the parties have not indicated what percentage of the total settlement amount reflects compensation for the FLSA claims and what portion, if any, is consideration for the other claims, such as Plaintiffs' harassment/discrimination claim.  *See Banegas v. Mirador Corp.*, No. 14 Civ. 8491 (AJN), 2016 WL 1451550, at *3 (S.D.N.Y. Apr. 12, 2016) (rejecting a proposed FLSA settlement because the parties failed to indicate "how much of the settlement is actually compensation for [the plaintiff's] FLSA claims, as distinct from her discrimination claims" (emphasis omitted)); *see also Amhaz v. Booking.com (USA) Inc.*, No. 17 Civ. 2120 (GBD) (OTW), 2019 WL 9122944, at *2 n.4 (S.D.N.Y. Oct. 29, 2019) (recommending approval of a proposed settlement in a case in which the plaintiff brought FLSA claims and sexual harassment claims because "the proposed settlement expressly state[d] that the settlement amount [was] solely to settle her FLSA claims"), *report and recommendation adopted* 2020 WL 3498264 (S.D.N.Y. June 29, 2020).  Although the parties explain that the settlement will be divided among the three Plaintiffs "based on their losses during their employment," Dkt. 48 at 4, it is unclear if this is a reference to their wage-and-hour claims only or if Plaintiffs are being compensated for their sexual

harassment/discrimination claim too.  The Court cannot assess whether the settlements are fair and reasonable without this information.  The parties must indicate this breakdown in any future proposed settlement agreements.

The Court also questions the length of the proposed payment plan, which would require the Cordoba Defendants to pay $1,000 to Plaintiffs' counsel every month for the next twenty-seven months.  This is a concern because the parties indicate that one risk of going to trial would be the "burdens of collection" due to Defendants' "financial situation."  Dkt. 48 at 4.  The parties even suggest that Defendants could "become bankrupt in part due to the current economic conditions due to the pandemic."  *Id.*  In any future application, the parties should explain why an agreement in which Plaintiffs would not receive the full settlement amount until 2023 at the earliest would not raise these same concerns.

## B.  Necessary Information About Number of Hours Worked and Applicable Wages

The second issue is that "[t]he parties have not provide[d] the Court with each party's estimate of the number of hours worked or the applicable wage."  *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) (second alteration in original) (internal quotation marks and citation omitted).  Plaintiffs have calculated that the total lost wages equal $59,735.50 and that the total possible recoverable amount, including liquidated damages, is $119,470.32.  Dkt. 48 at 4. Although the parties' joint submission includes some general details about the hours Plaintiffs worked and the salaries they received, *see id.* at 2, the parties have neither explained how they arrived at the estimated total recoverable figures nor submitted any "declarations, affidavits or exhibits substantiating [their] arguments."  *Nights of Cabiria*, 96 F. Supp. 3d at 177; *see also Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20 Civ. 7131 (KMK), 2021 WL 38264, at *4 (S.D.N.Y. Jan. 5, 2021) (rejecting a proposed settlement agreement because the plaintiff failed to

submit an explanation of the methodology used to calculate the estimated recovery amount or the underlying data on which the calculation was based).  The extent to which Defendants disagree with these estimations, and their basis for such disagreement, is also unclear.  The parties only state that "[t]he Cordoba Defendants disputed the Plaintiffs' claims for damages as well as the hours worked," Dkt. 48 at 2, and that that this settlement "addresses the Defendants' dispute of the wages Plaintiffs are owed," *id.* at 4.

Without this information, the Court is unable to evaluate the proposed agreements under the first three *Wolinsky* factors.  *See* 900 F. Supp. 2d at 335.  The Court again reminds the parties that any future joint submission requesting approval of a proposed agreement must include this information.  *See* Nov. 2, 2020 Tr. at 19 ("[A]ny revised settlement agreement should specify the actual dollar amount of these [P]laintiffs' total recovery, and the accompanying submission should explain the calculations and the factual basis underlying those recovery amounts.").

## C.  Vasquez Defendants' Release Provision

Third, the release provision as to the Vasquez Defendants remains too broad.  This agreement requires Plaintiffs to waive various wage-and-hour claims and "all other related claims related to any act and or any occurrence and or any omission through the date of the execution of this agreement, including but not limited to any claim alleging that the Vasquez defendants are successors to the Cordoba Defendants."   Dkt. 48-2 at 4.  This broad provision fails to indicate what constitutes a "related" claim.  At conference, the Court explained that this line in particular, and the release provisions generally, had to be "tied to FLSA-related claims."  Nov. 2, 2020 Tr. at 14.  Counsel for the Vasquez Defendants suggested that some case law may allow for a release of broader claims when Plaintiffs assert a theory of successor liability.  *Id.* at 15.  But despite the Court's invitation for the parties to submit briefing on this issue, *id.* at 15-16, the parties cite no

7

cases in which a court approved a settlement that required the plaintiffs to waive claims beyond those related to FLSA wage-and-hour issues in such a situation.  In sum, the language here remains "far too sweeping to be 'fair and reasonable'" because it includes "claims that have no relationship whatsoever to wage-and-hour issues." *Nights of Cabiria*, 96 F. Supp. 3d at 181.  "[T]he Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." *Id.*  This release provision must be corrected before the Court can approve the agreement with the Vazquez Defendants as fair and reasonable.

**D.  Signature Page for the Settlement Agreement with the Cordoba Defendants**

There is one other issue that weighs on the Court's decision today.  Based on the joint submission, the Court cannot be certain that all of the Cordoba Defendants agreed to the revised proposed agreement as to them.  This is reason enough to reject that proposed settlement at this time.  The agreement at issue presumably was drafted sometime after the November 2, 2020 conference.  However, Omar's signature is dated October 18, 2020.  Dkt. 48-1 at 7.  This discrepancy is cause for concern.  If the parties wish to submit a new proposed settlement agreement, they must make sure that all parties are signatories to the new agreement and that any relevant documents requiring parties' signatures are signed after the new proposed agreement is drafted.

**IV.  Conclusion**

For the foregoing reasons, the parties' request for approval of their proposed settlement agreements is DENIED without prejudice.  If the parties wish to submit new proposed settlement agreements that address the issues discussed, along with all necessary information, for approval, they shall do so by February 15, 2021.  The parties are respectfully reminded that any future

8

submission must also include evidence justifying Plaintiffs' counsel's requested fee.  *See* Nov. 2, 2020 Tr. at 21; *see also* Dkt. 47.  If instead, the parties wish to proceed with litigating this matter, they shall inform the court by joint letter by February 15, 2021.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 48.

SO ORDERED.

Dated: January 24, 2021
      New York, New York

                                   JOHN P. CRONAN
                             United States District Judge